UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS GOSTON,

                      Plaintiff,

                                                  **Hon. Hugh B. Scott**

                 v.                                        06CV738A

                                                    **Report**
                                                    **and**
MICHAEL J. ASTRUE Commissioner of          **Recommendation**
Social Security[1],

                      Defendant.
_____

      Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 8 (defendant Commissioner)[2], 10 (plaintiff)[3]).

## **INTRODUCTION**

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff was no longer disabled and, therefore, is not

entitled to continued disability insurance benefits and/or Supplemental Security Income benefits.

---

     [1]On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for now former Commissioner Jo Anne B. Barnhart as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

     [2]In support of this motion, defendant Commissioner filed his memorandum of law, Docket No. 9; and reply memorandum, Docket No. 14. He sought, and was granted, leave to file an oversize reply memorandum, see Docket No. 12.

     [3]In support of this motion, plaintiff filed his memorandum of law, Docket No. 10; and his reply memorandum, Docket No. 13.

## PROCEDURAL BACKGROUND[4]

The plaintiff, Douglas Goston ("Goston" or "plaintiff"), filed an application for disability insurance benefits on January 20, 1993. That application was denied initially and on reconsideration. Plaintiff appeared before Administrative Law Judge ("ALJ") F. Lambert Haley and, in a decision dated March 10, 1994, ALJ Haley found that plaintiff was disabled as of July 17, 1993 (R. 24, 98-106[5]).

The Social Security Administration subsequently determined that plaintiff's disability ceased as of April 18, 2002 (R. 24, 108, 110, 112). Plaintiff requested reconsideration of the disability cessation determination on May 7, 2002 (R. 115), and, upon reconsideration, that decision was affirmed (R. 24, 119, 121). Plaintiff requested a hearing to contest the adverse reconsideration on October 29, 2002 (R. 24, 142). Plaintiff appeared before ALJ Robert T. Harvey, who considered the case <u>de novo</u> and concluded, in a written decision dated January 25, 2005, that plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 6, 2006, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 7, 2006 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 8, 10). The motions were argued and submitted on November 2, 2007 (Docket Nos. 15, 16).

---

[4] References noted as "(R.__)" are to the certified record of the administrative proceedings.

[5] The version of this decision included in this record has the pages out of order.

## FACTUAL BACKGROUND

Plaintiff was born in May 11, 1952, and completed his high school education. He has worked as a boilermaker (R. 25). He claimed a disability arising from an automobile accident which caused degenerative disc disease, osteoarthritis of the back, and spinal stenosis, with neck pain, lower back pain, left knee problems, and arthritis in the right thumb (R. 25, 121).

## MEDICAL AND VOCATIONAL EVIDENCE

In 1994, plaintiff was found to be disabled on the basis of severe degenerative disc disease of the cervical spine, mild scoliosis, neck and back injuries from an automobile accident (R. 26). ALJ Haley found that his condition met the requirements for Listing section 1.05C (R. 26, 104).

In May 2001, plaintiff has a CT scan performed of his lumbar spine. His treating physician, Dr. Jeremiah O'Sullivan, found that the scan revealed a mild lumbar spondylosis (R. 284). In December 2001, Dr. O'Sullivan reported that plaintiff had no weakness in his extremities, plaintiff's gait was normal, and he was taking Celebrex to control the pain (R. 248).

At a March 2002 consultative examination by Dr. Steven Dina, plaintiff was diagnosed with having joint pain related to mild degenerative joint disease but was found to be within normal limits (R. 26, 214). Plaintiff was able to get on and off the examination table without assistance (R. 216). The Social Security Administration subsequently determined that plaintiff's disability ceased as of April 18, 2002 (R. 24, 108, 110, 112). Another consultative examination, by Dr. Abdul Islam, on August 2002 found plaintiff had ongoing neck and lower back pain, degenerative/discogenic in etiology, and hypertension with suboptimal control (R. 26, 265, 267). There was no evidence of neurological deficits (R. 26) and plaintiff did not appear to be in acute

distress (R. 266). Plaintiff was able to climb on and off examination table with some difficulty (R. 267). Plaintiff had mild restrictions on standing, sitting, and lifting due to lower back pain (R. 267). An x-ray of his lumbar spine in August 2002 was normal (R. 26).

Plaintiff had another consultative examination in November 3, 2004, by Dr. Christine Holland (R. 26, 351), diagnosing plaintiff with low back pain, neck pain, and headaches of unknown etiology (R. 26, 353). Plaintiff had no difficulty getting on and off the examining table or changing (R. 352). X-rays of the cervical spine showed mild degenerative disc disease at C5-C6 and C6-C7 levels. Dr. Holland concluded that plaintiff had limitations on heavy lifting, prolonged standing, and twisting, but found that plaintiff could perform light work (R. 26, 353). In a separate evaluation, however, Dr. Holland found that plaintiff's standing and walking was impaired and that he could work at least two hours of an eight-hour workday (R. 356).

ALJ Harvey found that plaintiff had mild degenerative disc disease of the cervical spine and low back pain, impairments that were severe but not sufficiently severe to be equal to a listed impairment, concluding that plaintiff no longer has an impairment equivalent to Listing section 1.05C (R. 26-27). The ALJ concluded that plaintiff had medical improvement and could perform light work, that is, he can lift and carry 20 pounds occasionally and 10 pounds frequently, he can sit for two hours and stand or walk for six hours in an eight-hour day, noting "occasional limitations" for bending, climbing, stooping, squatting, kneeling, and pushing/pulling with lower extremities (R. 27). It was found that plaintiff could not crawl or climb ropes, ladders, or scaffolds, work in unprotected heights or around heavy, moving or dangerous machinery, or work in areas exposed to cold or dampness (R. 27-28). The ALJ found that there was nothing in the record to support plaintiff's subjective complaints about pain and

limitations on his daily life (R. 27).  The ALJ then rejected the opinions of Dr. O'Sullivan as not being supported by the objective clinical record and rejected Dr. O'Sullivan's Residual Functional Capacity Assessment (R. 324, 325-30) "for lack of objective evidence" (R. 27).

While finding that plaintiff cannot return to his past relevant work as a boilermaker, the ALJ applied the Medical-Vocational Guidelines and concluded that plaintiff is "not disabled," with jobs available in the national economy that he could perform (R. 28-29).

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff ceased to be under a disability is supported by substantial evidence.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

In particular, substantial evidence here involves two components, first whether the ALJ applied the medical improvement standard appropriately and, in general, whether there is substantial evidence to support the decision.

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

But where a beneficiary plaintiff's medical condition improves to the extent that he can engage in substantial gainful activity, the beneficiary is no longer entitled to Social Security benefits, 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594 (Docket No. 9, Def. Memo. at 8). In order to terminate benefits, the Commissioner must show, by substantial evidence, that a medical improvement has taken place, 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594 (Docket No. 9, Def. Memo. at 8; Docket No. 14, Def. Reply Memo. at 1-2). As noted by plaintiff (Docket No. 10, Pl. Memo. at 13-14), evaluation of a plaintiff's medical improvement involves eight steps:

> **Step one**: The Commissioner must first determine whether the claimant is engaged in substantial gainful activity.
> **Step two**: If the claimant is not engaged in "substantial gainful activity," the Commissioner must determine whether the claimant suffers from an impairment which meets or equals the severity of an impairment listed in Appendix 1 of the regulations.
> **Step three**: If there is no impairment which meets or equals a listing, the Commissioner must determine whether there has been medical improvement. If there is no decrease in the medical severity, there is no medical improvement.
> **Step four**: If there has been medical improvement, the Commissioner must determine whether such improvement is related to the ability to work, or whether there has been an increase in the claimant's residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination.
> **Step five**: If there has been no medical improvement found at step 3 or if at step 4, the medical improvement was not related to the ability to work, the Commissioner must determine whether any exceptions to the medical improvement standard exist. If no exceptions apply, the Commissioner will find that the disability continues. If the first group of exceptions applies, continue to step 6. If an

>exception from the second group of exceptions applies, the Commissioner will find that the disability ended.
>**Step six**: If there has been medical improvement related to the claimant's ability to work or if one of the first group of exceptions to medical improvement applies, the Commissioner must determine whether the claimant currently has a severe impairment or combination of impairments. If not, the claimant is no longer disabled.
>**Step seven**: If the impairment is severe, the Commissioner assesses the claimant's residual functional capacity based on the claimant's current impairments, and whether the claimant can still do the work she has performed in the past. If the claimant is still capable of doing such work, the Commissioner will find that the claimant is no longer disabled.
>**Step eight**: If the claimant cannot do the kind of work that he or she performed in the past, the Commissioner must review the claimant's residual functional capacity and his or her age, education, and work experience to determine whether the claimant is capable of performing any other work which exists in the national economy. If the claimant can, the Commissioner will find that the disability ended. If not, the disability continues.

20 C.F.R. § 404.1594(f).  As noted by Judge Telesca, once the Commissioner finds disability, that determination "cannot be reversed without the [Commissioner] making clear findings based upon relevant evidence of changes which have occurred in the claimant's condition.  Without stating the reasons for changing its position, the assumption is that there is not new evidence of any change in the claimant's condition," Northrup v. Schweiker, 561 F. Supp. 1240, 1242 (W.D.N.Y. 1983).

*Application*

In the instant case, plaintiff argues that the ALJ failed to apply eight-step medical improvement standard, 20 C.F.R. § 404.1594(f), and improperly found that plaintiff had medical improvement (Docket No. 10, Pl. Memo. at 15, 16-17, 13-15).  Next, he argues that the ALJ's determination that his disability ceased was not based on substantial evidence. In particular, plaintiff claims that there was no evidence that plaintiff could perform full time light work.  He

faults the ALJ for not giving the opinion of plaintiff's treating physician Dr. O'Sullivan little weight, for example not discussing Dr. O'Sullivan's opinion in Residual Functional Capacity Assessment that plaintiff could not lift so much (R. 325-32, 326, 327, 328, 330).  Plaintiff contends that the ALJ failed to use the 1993 original x-ray and the original doctors' reports as comparison with plaintiff's 2002 condition.  Finally, plaintiff disputes the ALJ's finding that plaintiff was not credible, arguing that this finding was not supported by evidence.  (Docket No. 10, Pl. Memo.)

I.      Medical Improvement

The ALJ did not cite to, or apply, the medical improvement standard.  Applying the eight-step analysis now, this Court finds that the ALJ determined whether plaintiff was engaged in substantial gainful activity (R. 26), and whether plaintiff suffered from an impairment that meets or equals the severity of a listed impairment (R. 26), the first two steps.  As for the third step, the ALJ noted medical improvement in plaintiff's condition (R. 26-27), which plaintiff disputes.  Plaintiff argues that the ALJ himself noted the limitations on plaintiff but summarily concluded that he no longer had an impairment equal to one in the regulation listing (Docket No. 10, Pl. Memo. at 16).

The Commissioner argues that medical improvement is defined in the Social Security regulations as "any decrease in the medical severity," 20 C.F.R. § 404.1594(b)(1) (Docket No. 9, Def. Memo. at 8).  The Commissioner parses the ALJ's decision based upon the eight-step medical improvement standard that the ALJ himself did not apply, finding (at the third and fourth steps) that the ALJ analyzed whether there was medical improvement (Docket No. 9, Def.

Memo. at 11), finding that there was a decrease in the medical severity of plaintiff's impairments (id.).

The ALJ should have applied this eight-step analysis to determine if plaintiff's impairment had decreased. This basis alone should justify a remand, but, given the analysis of plaintiff's condition by the ALJ the evidence to establish his condition should be considered next.

II.     Substantial Evidence

Alternatively, plaintiff argues that there was not substantial evidence to support the ALJ's findings, noting several areas that lack sufficient evidence (Docket No. 10, Pl. Memo. at 20-25; see id. at 17-19). In his reply, he argues that the ALJ did not properly evaluate plaintiff's complaints of pain (Docket No. 13, Pl. Reply Memo. at 6).

The ALJ also should have considered the treating physician's, Dr. O'Sullivan, findings and given them controlling weight as required by Social Security regulations, 20 C.F.R. § 404.1527(d)(2). The ALJ, if relying solely upon the consultative physician, should have recognized that plaintiff could only perform sedentary work (due to Dr. Holland's finding that he could perform work for only up to two hours (R. 356)) and (given plaintiff's age approaching 50 years old (see R. 52)) that plaintiff remained disabled.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 8) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 10) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>F.D.I.C. v. Hillcrest Associates</u>, 66 F.3d 566 (2d Cir. 1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988).

The District Court on <u>de novo</u> review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
November 6, 2007

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

_/s/ Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
November 6, 2007